## BURNS vs. KEMPSHALL & EGGLESTON.

Where a note had been transferred by the payee, and an action was brought upon it by the holder against the maker, the *payee*, called as a witness by the maker, was held to be *privileged* from answering questions put to him for the purpose of showing any *agreement* respecting the note or the *consideration* thereof, or any *payment* thereupon to him, the defendant having avowed that his defence was *usury*, and that usurious interest had been received by the payee, as the tendency of the answers might be to *subject himself* either to a *penalty* or to an indictment for a *misdemeanor*.

THIS was an action of *assumpsit*, tried in December, 1839, before the Hon. NATHAN DAYTON, one of the circuit judges.

The suit was brought on two promissory notes made by the defendants, payable to E. Pelton or bearer, one for $440, dated 22d June, [ *361 ] 1836, and the other for $488, dated 4th *February, 1837. After the plaintiff had proved the making of the notes, the counsel for the defendants opened by stating that the defence which would be relied upon was *usury,* and that Kempshall, one of the defendants, *had paid to Pelton, the payee of the note, various sums of money, amounting to about three per cent per month, for forbearance upon the notes declared upon,* and called *Pelton,* the payee of the note, as a witness in the cause. The witness being sworn, the counsel for the defendants asked him *what was the consideration of the note of the 22d June,* 1836. To which question counsel in behalf of the witness *objected:* insisting that the witness was not bound to answer, as his doing so might tend to convict him of a misdemeanor, or expose him to a penalty or forfeiture. The judge allowed the objection. The following questions were then put to the witness, all of which, on objection being made, were overruled: Did Kempshall, at the time you took the notes, pay you any money? Was there any agreement between you and the defendants, or either of them, in regard to the consideration or subject matter of the note, at the time or previous to the giving thereof, and if so what was the agreement? Did you at the time of making the note, or at any time before or afterwards, advance to the makers, or to either of them, any money upon the same; and lastly, Did the defendants, or either of them, ever pay you any money for interest upon the note? As to the *second note,* the witness testified that he received it at about the time of its date, and remained the owner and holder thereof until about the 1st June, 1837. The same questions, in substance, were then put to him in respect to this note, which were put in reference to the first note—all of which were overruled. The following question was then put to him in reference to *both notes:* " Was there any agreement between you and the defendants, before or at the time when the said notes or either of them was given, with respect to the rate of interest which the defendants, or either of them, were to pay upon the notes, or either of them, or upon any money loaned by you to the defendants, or either of them, which was the consideration of the said notes, or of either of them?"—which question was also overruled. [ *362 ] *The defendants excepted to the decisions of the judge, and the jury having rendered a verdict for the plaintiff, the defendants now asked for a new trial.

*C. P. Kirkland,* for the defendants, insisted that a *penalty* being imposed by the statute for taking usury, an indictment for a *misdemeanor* did not lie at the time when the notes in question were given. Besides, the *prohibi-*

*tion* of the statute extends only to the taking and receiving of more than the legal rate of interest, and not to the usurious agreement. The *penalty*, by way of forfeiture of the notes, would not have been incurred by the witness, but by the holder of the notes. It is true, whatever money the witness had received above the legal rate of interest might have been recovered back from him ; but such liability is not a penalty. He always was liable to refund in an action for money had and received. The witness also might have relieved himself from all liability by a discovery and return of the money. He therefore ought not to have been excused from answering the questions put to him on the trial.

*W. Tracy*, for the plaintiff. The taking of usury is a misdemeanor both at common law and by statute. The act of 15th May, 1837, merely enlarged the punishment. Being subject to an indictment, the witness was privileged by law from making any answers which might have had a tendency to convict him of the offence.

*By the Court,* COWEN, J. The defendants' counsel started with the avowed purpose of proving not only that the notes were made on an usurious consideration, but that usurious interest had been received upon them. As to the bearing of the questions put to the payee, who was then called, there can be no doubt that any one of them might, if answered, have furnished a link in the chain of proof that usurious interest had actually been paid. An agreement to receive it might serve to qualify the subsequent receipt of the money, while the latter might be the consummation of the previous corrupt agreement. The questions had all, in effect, *the same tendency, and come plainly within the cases cited on [ *363 ] the argument. *U. States* v. *Burr,* 1 *vol. of Rob. Report of that case,* 207, 208, 242 *to* 245. *The People* v. *Mather,* 4 *Wendell,* 236, 237, 252 *to* 254. The rule laid down by Marshall, C. J. in the first, and Marcy, J. in the second case, is, that where the court perceive the answer *may tend to criminate* the witness, he should be excused from answering. Several cases illustrating this rule are collected in *Cowen & Hill's Notes to* 1 *Phil. Ev.* 736 *to* 738, *id.* 734, 5. The witness called had been *prima facie* an original party to the note, on whom the imputation of usury would necessarily fall. Thus related, it was sought to make him state certain facts which in their very nature and according to the statement of the defendants themselves, tended to make out an usurious agreement. That, by the next step in the proof, might have been connected with his alleged receipt of the money.

Then, if the offence of receiving usurious interest would, in the state of the law at the time when these notes were given subject the witness to a

penalty, though merely pecuniary, his privilege is not denied.    It is clear under the statute of 1837, but that does not apply.   By the law as it stood when these notes were executed, the receipt of usurious interest was positively forbidden, by 1 R. S. 760, 2d ed. § 2 ; and when received, might be recovered back by the payor within one year ; and on his default to sue within that time, by an overseer or superintendent of the poor.  1 R. S. 760, 2d ed. § 3, 4.   This was either a penalty or it was not.    If not, then no penalty was specifically prescribed by the statute, and the offence came within the general provision of the revised statutes, that where no penalty is imposed by a statute which prohibits the doing of an act, it shall be deemed a misdemeanor.   2 R. S. 582, 2d ed. § 45.

It follows that the witness' privilege was properly allowed, and a new trial is therefore denied.